237 N.J. Super. 132 (1989)
567 A.2d 228
WILLIE T. ALLEN, PETITIONER-RESPONDENT,
v.
EBON SERVICES INTERNATIONAL, INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 1989.
Decided October 5, 1989.
*133 Before Judges J.H. COLEMAN and BRODY.
Francis T. Giuliano argued the cause for appellant (Mattson, Madden & Polito, attorneys; Francis T. Giuliano of counsel and on the brief).
Michael Bass argued the cause for respondent (Freeman & Bass, attorneys; Michael Bass on the brief).
PER CURIAM.
In this workers' compensation case, the petitioner was awarded a permanent partial disability of 12 1/2%. The employer has appealed contending that petitioner failed to present demonstrable objective medical evidence of permanent disability required by N.J.S.A. 34:15-36 as interpreted by Perez v. Pantasote, Inc., 95 N.J. 105 (1984).
The facts developed at the hearing are not complex. While petitioner was employed on December 6, 1985, he was struck on the head that caused a loss of consciousness. He received overnight care at a local hospital. He was treated by Dr. I. Ahmad, an orthopedist, from December 12, 1985 through February 13, 1986 for injuries to the head and neck with radiation of pain to the right arm. The treatment consisted of applying hydroculator pads to the injured parts. His final diagnosis was cervical sprain, myositis, radiculitis and headaches. Dr. Ahmad estimated a permanent disability of 17 1/2%.
Petitioner was also treated by Dr. Samuel Pollock, a neuropsychiatrist, on eleven occasions between December 12, 1985 *134 and February 13, 1986. His treating diagnosis was "a cerebral concussion with unconsciousness, contusion of the scalp and neck, post-concussional syndrome, traumatic anxiety stress disorder, [and] cervical radiculopathy causing neck pain and loss of mobility of the head and neck." His treatment consisted of "medication for his headaches and nerves and checking him over." Dr. Pollock estimated a partial permanent disability of 20% on February 13, 1986. The employer introduced reports of evaluations conducted by Dr. Herman Lohman, an orthopedist, and Dr. David J. Flicker, a neuropsychiatrist, who found no permanent disability.
The scope of our appellate review is limited to a determination of whether the findings of the Judge of Compensation could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole, with due regard to the opportunity of the judge who heard the witnesses to weigh their credibility. Close v. Kordulak Bros., 44 N.J. 589, 599 (1965). Our review begins with N.J.S.A. 34:15-36 which, in pertinent part, provides:
`Disability permanent in quality and partial in character' means a permanent impairment caused by a compensable accident or compensable occupational disease, based upon demonstrable objective medical evidence, which restricts the function of the body or of its members or organs; included in the criteria which shall be considered shall be whether there has been a lessening to a material degree of an employee's work ability....
Under this statutory definition of partial permanent disability, the "first essential that must be met is a satisfactory showing of demonstrable objective medical evidence of a functional restriction of the body, its members or organs." Perez v. Pantasote, Inc., 95 N.J. at 116. Perez further instructs that the existence of demonstrable medical evidence cannot be based on a petitioner's subjective complaints. Ibid.
Here, the judge concluded that petitioner has "objective signs of substantial injury" related to the accident without articulating what they are. This finding was apparently intended to satisfy the Perez requirement that demonstrable medical evidence of disability cannot be based on petitioner's subjective *135 complaints. Our careful study of the record reveals that Dr. Ahmad testified that on February 13, 1986, when he conducted his last examination, petitioner complained of a painful cervical spine with radiation of pain to the right arm with some numbness. He found spasms in the cervical spine and over the trapezius muscles. He observed some straightening of the normal cervical curve and some tenderness over the neck. The cervical spine was restricted by 15 degrees and lateral bending was restricted by 10 degrees. In addition, Dr. Pollock, petitioner's other expert and treating physician, testified that after treating petitioner on eleven occasions, petitioner had the same complaints on February 13, 1986, as he had on December 12, 1985. He still wore a cervical collar as he had worn at the time of the first examination. He found only slight improvements. At the time of his initial examination, he reported that petitioner had restrictions in moving his head and neck in all directions. He also reported that some of petitioner's neurological signs were hyperactive while others were hypoactive.
The judge's conclusory statement that petitioner has "objective signs of substantial injury" does not satisfy the requirements of N.J.S.A. 34:15-36 as interpreted by Perez. The Judge of Compensation failed to focus on the statutory requirements and to set forth adequate findings. His findings suffer from the lack of precision in explicating what, if any, demonstrable medical evidence of disability existed. The failure to make the required specific findings to inform the interested parties and any reviewing tribunal of the basis for the decision, makes it impossible for us to conduct a proper review contemplated by Close v. Kordulak Bros.
In addition, the award of permanent disability must be reversed for another reason. An award of compensation for partial permanent disability must be based on the disability that exists at the time of the determination. Lister v. J.B. Eurell Co., 234 N.J. Super. 64, 72 (App.Div. 1989); DiCostanzo v. Matthews Constr. Co., 110 N.J. Super. 383, 389 (App.Div. 1970), *136 aff'd 58 N.J. 159 (1971). The determination in this case was made on January 13, 1989. The medical examinations of Drs. Ahmad and Pollock, relied on by the judge in awarding partial permanent disability, were conducted on February 13, 1986. That means petitioner's doctors had not examined him within 26 months before petitioner testified and 35 months before the determination of disability. As the Supreme Court observed in Perez,
... the validity of a medical finding of a permanent injury may decrease with the passage of time. Surely the Legislature, in making minor injuries noncompensable, did not intend that awards routinely be made on the basis of medical examinations performed shortly after the accidents and well before the hearings in the absence of recent objective medical evidence of continued impairment. [Perez v. Pantosote, 95 N.J. at 119].
Furthermore, examinations relied upon by the judge were performed on the date the petitioner was discharged from treatment. Because demonstrable medical evidence of disability cannot be established with petitioner's subjective complaint, the hypothetical question propounded to the doctors which included petitioner's complaints at the time he testified on April 11, 1988, cannot satisfy the requirement that there be "recent objective medical evidence of continued impairment." Hence, the claim for partial permanent disability must be redetermined.
That part of the judgment awarding petitioner partial permanent disability is reversed. The matter is remanded to the Division for redetermination of permanent disability after reexaminations have been conducted. We do not retain jurisdiction.
Reversed in part and remanded.